**KOLLER LAW PC**
**By: DAVID M. KOLLER, ESQUIRE**
**ID No: 90119 (DMK5672)**
**2043 LOCUST STREET, SUITE 1B**
**PHILADELPHIA, PA 19103**
**(215)545-8917/(215) 575-0826 (fax)**
**ATTORNEY FOR PLAINTIFF**

**UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

_____

| | |
|---|---|
| **MARIA MUTO** | : **CIVIL ACTION NO:** |
| **1912 SOUTH CAMAC STREET** | : |
| **PHILADELPHIA, PA 19148** | : |
| | : |
|     **PLAINTIFF,** | : **HON.** |
| | : |
|     **v.** | : |
| **EXPEDITORS INTERNATIONAL OF** | : |
| **WASHINGTON, INC.** | : **COMPLAINT** |
| **1015 THIRD AVENUE, 12TH FLOOR** | : |
| **SEATTLE, WASHINGTON 98104** | : |
|     **DEFENDANT.** | : |

_____ :

      Plaintiff, Maria Muto, residing at 1912 South Camac Street, by and through her counsel,

David M. Koller, Esquire, avers the following against Defendant Expeditors International of

Washington, Inc.:

**INTRODUCTORY STATEMENT**

      Plaintiff Maria Muto (hereinafter referred to as "Plaintiff"), brings this action against

Defendant Expeditors International of Washington, Inc. (hereinafter referred to as "Defendant

Washington"), who employed Plaintiff from 1996 until March 12, 2010.  Plaintiff alleges that

she was discriminated against in violation of the Corporate and Criminal Fraud Accountability

Act of 2002, Title VII of the Sarbanes-Oxley Act of 2002, and pertinent provisions of federal

laws pertaining to securities fraud against shareholders.  Plaintiff also alleges that she was

discriminated against on account of her gender in violation of Title VII of the Civil Rights Act of

1964 (hereinafter referred to as the "Title VII") and was retaliated against in violation of Title VII.

## THE PARTIES

1. Plaintiff is a fifty four (54) year old Caucasian female.

2. At all times relevant hereto, Plaintiff was employed by Defendant Expeditors as first an Import Agent, then promoted to an Accounting Manager position, then promoted to an Office Manager position, and finally promoted to a Regional Finance Supervisor position, which was the position she held at the time of her unlawful termination.

3. Upon Plaintiff's information and belief, Defendant Expeditors is a corporation headquartered at 1015 Third Avenue, 12th Floor, Seattle, Washington, 98104.

4. Defendant Expeditors is a publicly traded company, which files Form 10-K reports with the Securities and Exchange Commission, pursuant to Section 15(d) of the Securities Exchange Act of 1934, and thus is a company covered under Section 806 of the Sarbanes-Oxley Act of 2002 (hereinafter referred to as "the Act" or "SOX").

5. At all times relevant hereto, Defendant Expeditors employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory and illegal treatment which forms the basis of Plaintiff's allegations in the instant Complaint.

6. At all times relevant hereto, Defendant Expeditors employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory and illegal treatment which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

7.  Jurisdiction is conferred upon the United States District Court for the Eastern District of Pennsylvania pursuant to federal question jurisdiction under 28 U.S.C. § 1331.

8.  Plaintiff also brings this claim pursuant to 18 U.S.C. §1514A(b)(1)(B) in that the Secretary of Labor did not issue a final decision within one hundred and eighty (180) days of filing the Complaint with the Secretary, and that the delay was not due to the bad faith of the Plaintiff.

9.  In addition, this Court has supplemental jurisdiction pursuant to 28 U.S.C. §1387, as the state law claims are sufficiently related to the federal claims so that they are part of the same case or controversy under Article III of the United States Constitution.

10. Defendant Expeditors regularly conduct business within the Eastern District of Pennsylvania and the incidents, events, and acts giving rise to Plaintiff's claims all took place here, and so therefore, venue is appropriate here pursuant to 28 U.S.C.§3732(a).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff exhausted her administrative remedies under the Sarbanes-Oxley Act of 2002.

12. Specifically, Plaintiff filed a Complaint with the United States Secretary of Labor, Department of Labor, Occupational Safety and Health Administration, Philadelphia Area Office on or about June 10, 2010.

13. Over one hundred and eighty (180) days have passed since Plaintiff filed the Complaint with the Department of Labor.

14. As such, Plaintiff is exercising her right to proceed with this matter in federal court.

15. Plaintiff also exhausted her administrative remedies under Title VII. *Butterbaugh v. Chertoff*, 479 F. Supp. 2d 485 (W.D. Pa. 2007).

16. Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission on August 23, 2010.

17. Plaintiff's Charge of Discrimination was assigned EEOC Charge Number 530-2008-02754.

18. Plaintiff alleged in her Charge of Discrimination that Defendant Expeditors discriminated against her on account of her gender and in retaliation for complaining about such treatment.

19. On or about August 12, 2011, the EEOC issued Plaintiff a "Dismissal and Notice of Rights" (hereinafter referred to as "Notice of Right to Sue") which provided the following determination: "Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the Defendant Expeditors is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge."

20. The Notice of Right to Sue further provided that Plaintiff "may file a lawsuit against the Defendant Expeditors under federal law based on this charge in federal court. [Plaintiff's] lawsuit must be filed within 90 days from [her] receipt of this Notice; or [her] right to sue based on this charge will be lost."

21. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

22. Upon information and belief, the EEOC advised Defendant Expeditors of Plaintiff's intent to file suit and, per the requirements of Title VII for resolution through conciliation, conference, or persuasion, attempted but failed to achieve a voluntary resolution of Plaintiff's claims of employment discrimination.

## PLAINTIFF'S EMPLOYMENT BACKGROUND

23. Plaintiff began working for Defendant Expeditors in 1996 as an Import Agent.

24. Defendant Expeditors promoted Plaintiff to Accounting Manager in or around July 1, 1998.

25. Defendant Expeditors promoted Plaintiff to Office Manager on or about April 16, 2004.

26. Defendant Expeditors promoted Plaintiff to Regional Finance Supervisor in or around March 1, 2005, which was the position Plaintiff held at the time of her termination.  For a period of time prior to the alleged retaliation, she was permitted to work out of her house in Philadelphia, Pennsylvania when she was not traveling as part of her job duties.

27. As Regional Finance Supervisor, Plaintiff earned approximately $8,000 a month plus bonus, which was roughly equivalent to an annual salary of $90,000.

## PLAINTIFF DISCOVERS THAT DEFENDANT EXPEDITORS OVERSTATED ITS REVENUES

28. Defendant Expeditors' Northeast Region engaged in a scheme to overstate its revenues by various methods.

29. In her capacity as Regional Finance Supervisor, Plaintiff discovered these as well as numerous other accounting practices being performed by Defendant Expeditors' Northeast Region.

30. Specifically, Plaintiff discovered the following practices routinely being performed by Defendant Expeditors' Northeast Region:

    a.   Duplicate billings of vendors, where both the origin shipper and the consignee at the destination were being charged the same fees and instead of refunding the money, Defendant Expeditors recorded the money into revenue;

b.  Certain vendor charges were billed to accounts which often Defendant Expeditors never received an invoice from the vendor, so instead of researching for corrections to be made, money was taken into revenue.

c.  Expenses were paid from revenue, such as, but not limited to temps, warehouse charges, rent, and others, which would then skew revenue earnings, and consequently, manager's bonuses, commissions for sales executives, and contributions to Corporate Headquarters.  Often, Defendant Expeditors' Northeast Region knowingly and intentionally picked files at random to sprinkle these expenses around evenly so as to avoid obvious detection and liability;

d.  Operators would cancel billings and, rather than properly refund the account, instead would re-invoice charges into revenue with no cost in order to avoid detection by Corporate Headquarters (billing is considered a contract with accounts so to cancel and re-invoice charges into revenue violates that contract);

e.  Credit memos sent electronically by the origin to refund the shipper often pertained to a "Custom Duty" refund, or rate issue, and instead of a refund being issued to the shipper, the credit was taken into revenue;

f.  Hawb (house airway) that was changed at the origin from collect to prepaid was taken into revenue instead of properly refunding the importer at destination;

g.  Origin protects door delivery on Master file to the consignee on consol.  Operator then in error charges the delivery again on the house file level and instead of refunding for the duplicate charge, money was taken into revenue.

h.  During Corporate Headquarters monthly journals wherein it cleaned out the respective regional branches buckets (buckets are for recording small amounts

6

billed for vendor services which were under $500), these amounts were entered into revenue, sales commissions were not paid on these amounts, and thus the Profit & Loss Statement would not properly reflect a sales commission payroll expense.

31. Plaintiff reasonably believed that the aforementioned conduct violated Defendant Expeditors' stated policies and applicable federal securities laws, 18 U.S.C. § 1348 and SEC Rule 17 C.F.R. § 240.10b-5, and 17 C.F.R. § 240.13B-1.

## PLAINTIFF COMPLAINED TO MANAGEMENT

32. At various times and for a period of time dating as far back as a few years prior to her termination, Plaintiff reported the aforementioned discoveries and her repeated concerns to the District Managers, including the Product Managers, Regional Vice President, and Accounting Managers in the Northeast region, including but not limited to Joseph P. Coogan and Jonathan Peck.

33. On numerous occasions, Plaintiff suggested and asked for permission to contact Defendant Expeditors' Corporate Headquarters to advise of her concerns taking place in the Northeast Region.

34. Plaintiff made request after request after request for these issues to be corrected to ensure proper and lawful revenue reports, bookkeeping, and accounting.

35. Plaintiff also expressed her concerns during accounting conference calls, at training sessions, and through other means that keeping money that does not belong to the company, double billing, and the other violations described herein defrauds shareholders and is against Company Headquarter policy and federal and state law.

36. Mr. Coogan always instructed her not to report her concerns to Defendant Expeditors' Corporate Headquarters.

37. Mr. Coogan abided, and made well known, his policy that what happened in the Northeast Region should and would stay in the Northeast Region.

38. Other supervisors whom Plaintiff reported to often ignored her concerns and/or failed to address them as well.

39. For example, in or around August 2009, Plaintiff reported her discoveries regarding the failure to properly pay sales commissions to its commission-based employees to Corporate Headquarters, and specifically, to Jonathan Peck.

40. Mr. Peck advised Plaintiff that the issue is not a problem because sales executives probably were paid for commissions that they did not deserve.

**PLAINTIFF WAS TOLD TO DEAL WITH COOGAN FOR THESE ISSUES**

41. Plaintiff continued to do her job despite Defendant Expeditors' failure to address her concerns over what she believed was unlawful activity.

42. Plaintiff again brought her concerns to Defendant Expeditors, including but not limited to Mr. Peck, who instructed her to address her concerns directly with Mr. Coogan, who would help her resolve them.

43. Plaintiff soon realized that she was facing a very difficult and uphill battle in having to deal with Mr. Coogan with the hopes that he would address issues he routinely authorized and repeatedly failed to report.

44. Consequently, Plaintiff's job began to affect her health.

45. In or around late January/early February, 2010, Mr. Coogan told Plaintiff that her position as Regional Finance Supervisor was being eliminated because she was the only

person who held such a position – there were no other Regional Finance Supervisors besides Plaintiff.

46. In response, on February 9, 2010, Plaintiff sent Mr. Coogan an e-mail asking for a letter of recommendation and a letter from Defendant Expeditors stating that Plaintiff was being laid off.

47. Plaintiff did not believe, at the time, that her position was being eliminated because of her protected activity under SOX.

48. Upon receipt of the email, or shortly thereafter, Mr. Coogan called Plaintiff.

49. During said telephone conversation, Mr. Coogan told Plaintiff that she should never send an email like the February 9, 2010 email again.  He said that Plaintiff was not being laid off or let go, and that he will find her another position because he "gets paid to be creative."  He advised Plaintiff that upon his return from District Manager meetings, he and Plaintiff would speak regarding her next placement at Defendant Expeditors.

50. Plaintiff reasonably believed that Mr. Coogan would place her in another position at Defendant Expeditors upon his return from the District Manager meetings.

51. Thereafter, Plaintiff once again reiterated her concerns to Mr. Coogan about the practices described herein which she reasonably believed were unlawful and which unfortunately continued.

52. In response, Mr. Coogan advised Plaintiff that Corporate Headquarters would not permit her to work out of her home and that she must report to work at the Philadelphia office.

53. Plaintiff agreed that she would work out of the Philadelphia office but again asked Mr. Coogan that he assist her in addressing her concerns regarding Defendant Expeditors' accounting practices.

54. Again, Plaintiff asked Mr. Coogan to bring these issues to the attention of Corporate Headquarters' attention so that the issues could be address and remedied in order to preserve the company's integrity.

55. For a period of time after this telephone call, Mr. Coogan continued to ignore Plaintiff's pleas for help, although he advised Plaintiff they would speak upon his return from the District Manager meetings.

56. Plaintiff looked forward to Mr. Coogan's return from the District Manager meetings so that she could learn about her new placement and position at Defendant Expeditors and discuss in detail with Mr. Coogan her concerns of the unlawful activity.

## COOGAN TERMINATED PLAINTIFF'S EMPLOYMENT AS RETALIATION

57. Upon his return from the District Manager meetings, Mr. Coogan finally asked Plaintiff to compile a list of her aforementioned concerns in or around early March, 2010.

58. Plaintiff prepared a list of her aforementioned concerns and forwarded same in an e-mail to Mr. Coogan on March 10, 2010.

59. On March 12, 2010, Mr. Coogan called Plaintiff to advise her that her position was eliminated, and her employment with Defendant Expeditors was terminated.

60. This was the first time that Mr. Coogan told Plaintiff that her employment with Defendant Expeditors was terminated, and Plaintiff did not have any reason to believe that her employment with Defendant Expeditors was terminated prior to this date, based upon Mr. Coogan's prior representation that he would place her in another position.

61. Defendant Expeditors, by and through its agents and employees, including Mr. Coogan, terminated Plaintiff's employment from Defendant Expeditors because she blew the

whistle on what she believed were unlawful practices being conducted by Defendant Expeditors.

### COUNT I - VIOLATION OF THE SARBANES OXLEY ACT OF 2002
### *MARIA MUTO V. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.*

62. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

63. Defendant Expeditors is an employer within the meaning of 18 U.S.C. § 1514(A)(a).

64. Plaintiff engaged in protected activity under SOX.

65. Plaintiff provided information to a person with supervisory authority over her or a person who was otherwise authorized to investigate or discovery misconduct at Defendant Expeditors, as specified by 18 U.S.C. §1514A(a)(1).

66. Plaintiff reasonably believed that the information she provided evidenced violations by Defendant Expeditors of federal laws, rules, and regulations relating to securities and shareholder fraud.

67. Defendant Expeditors knew Plaintiff had engaged in protected activity under SOX.

68. In violation of SOX, 18 U.S.C. §1514A, and in retaliation for reporting her reasonable belief of Defendant Expeditors' violations of federal laws, rules, and regulations relating to securities and shareholder fraud, Defendant Expeditors terminated Plaintiff's employment.

69. Plaintiff's protected activity was a direct and contributing factor to Defendant Expeditors' unfavorable actions against her.

70. Defendant Expeditors had no legitimate business reason for its mistreatment of Plaintiff and the termination of her employment.

71. Plaintiff was not terminated for legitimate business reasons.

72. Defendant Expeditors' stated reasons for terminating Plaintiff were pretextual.

73. As a direct result of the aforesaid unlawful retaliatory employment practices, Plaintiff has sustained and will in the future sustain permanent and irreparable economic and other harm, including, but not limited to, the loss of employment, damage to her reputation, loss of earnings, loss of benefits, loss of future earning power and potential, back pay, front pay, emotion distress, attorney's fees, and interest.

## COUNT II – WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY
### *MARIA MUTO V. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.*

74. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

75. Defendant Expeditors, by and through its officers and agents, directed Plaintiff to engage in illegal activity that would violate the Pennsylvania Securities Act of 1972.

76. Plaintiff refused to engage in such illegal conduct.

77. Defendant Expeditors terminated Plaintiff's employment for reporting and refusing to engage in activity that was illegal under Pennsylvania law.

78. Defendant Expeditors' termination of Plaintiff's employment violated a well-established Pennsylvania public policy that bars an employer from firing an employee in retaliation for the employee's refusal to engage in illegal conduct.

79. Defendant Expeditors' wrongful termination of Plaintiff was willful, malicious, wanton, in bad faith and in reckless disregard to her rights and interests.

80. As a direct result of Defendant Expeditors' malicious, willful, wanton, bad faith, and reckless acts, Plaintiff has suffered emotional and psychological distress, discomfort, embarrassment, injury, pain and suffering.

81. As a direct result of Defendant Expeditors' malicious, willful, wanton, bad faith, and

reckless acts, Plaintiff has suffered loss of earnings and severely diminished earnings capacity to her great financial detriment and loss.

### COUNT III – GENDER DISCRIMINATION IN VIOLATION OF TITLE VII
### *MARIA MUTO V. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.*

82. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

83. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

84. As Regional Finance Supervisor, Plaintiff worked frequently with all male District Managers.

85. Plaintiff was frequently excluded from District Manager meetings and accounting meetings.

86. Plaintiff also was not invited to participate in various projects, meetings, trainings and social events.

87. Plaintiff received no support from the District Managers or the Regional Vice President and was not given important reports that she needed in order to perform her job functions.

88. Defendant Expeditors also denied Plaintiff raises and pay increases during her employment.

89. The Philadelphia branch manager instructed his staff to refrain from coming to Plaintiff for assistance with financial and accounting matters.

90. Defendant Expeditors operated like an old boys network that made it difficult for Plaintiff to perform her job.

91. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her gender (female).

13

92. As a result of Defendant Expeditors' unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**COUNT IV – UNLAWFUL RETALIATION IN VIOLATION OF TITLE VII**
***MARIA MUTO V. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.***

93. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

94. Plaintiff engaged in protected activity when she complained to Mr. Coogan and Defendant Expeditors about the aforementioned treatment of her.

95. Plaintiff suffered adverse job consequences.

96. There exists a causal connection between Plaintiff's protected activity and adverse job consequences.

97. As a result of Defendant Expeditors' unlawful retaliation, Plaintiff has suffered damages as set forth herein.

**COUNT IV – GENDER DISCRIMINATION IN VIOLATION OF PHRA**
***MARIA MUTO V. EXPEDITORS INTERNATIONAL OF WASHINGTON, INC.***

98. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

99. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her gender (female) and in violation of the Pennsylvania Human Relations Act ("PHRA").

100.    As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Maria Muto, requests that the Court grant her the following relief against Defendant Expeditors:

(a)    Damages for past and future monetary losses as a result of Defendant Expeditors' unlawful discrimination;

(b)    Compensatory damages;

(c)    Punitive damages (where applicable);

(d)    Liquidated damages (where applicable);

(e)    Emotional pain and suffering;

(f)    Reasonable attorneys' fees;

(g)    Recoverable costs;

(h)    Pre and post judgment interest;

(i)    An allowance to compensate for negative tax consequences;

(j)    A permanent injunction enjoining Defendant EXPEDITORS, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with them, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of federal and state law.

(k)    Order Defendant EXPEDITORS to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(l)    Order Defendant EXPEDITORS to make Plaintiff whole by providing appropriate back-pay with prejudgment interest, in amounts to be proven at trial, reinstatement to her position having compensation, responsibility, and duties, commensurate with her education, experience, and skills, and appropriate damages awarded;

(m)    Order Defendant EXPEDITORS to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for her adverse actions, disciplines, and termination; and

15

(n)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

Date: August 22, 2011                    **By: /s/ David M. Koller_____**
                                         David M. Koller, Esquire – DK5672
                                         **Koller Law, PC**
                                         2043 Locust Street, Suite 1B
                                         Philadelphia, PA 19103
                                         215-545-8917
                                         215-575-0826 fax
                                         Counsel for Plaintiff Maria Muto

16